```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ALABAMA
                     MIDDLE DIVISION
```

FILED
99 APR 23 PM 2:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
APR 23 1999

BERTIE DARLENE MARTIN,         )
                               )
     Plaintiff,                )
                               )
v.                             )    CV-99-AR-0744-M
                               )
GREATER GADSDEN HOUSING        )
AUTHORITY, et al.,             )
                               )
     Defendants.               )

**MEMORANDUM OPINION**

Plaintiff, Bertie Darlene Martin ("Martin"), comes before this court seeking declaratory and injunctive relief to reinstate housing assistance payments from defendant, Greater Gadsden Housing Authority ("GGHA"), under the federal Section 8 Tenant-Based Assistance Program, as regulated by 24 C.F.R. Part 982 ("Section 8").[1] Under the Section 8 program, rental payments are federally subsidized for low-income families. Unlike government-owned housing, Section 8 payments are made directly by the housing authorities to landlords of privately-owned housing. Martin's housing subsidy was terminated on March 17, 1999 by GGHA, which administers the Section 8 program where Martin lives. Although Martin's rental subsidy covering the month of March,

---

[1] The Section 8 regulations exist under the authority of the U.S. Housing Act of 1937, 42 U.S.C. § 1437a, 1437c, 1437f, and 3535(d).

1999 was paid, no subsidy has been paid since then.  Martin has continued to occupy her rental house under a "stand still" agreement with GGHA and with her landlord's tolerance and patience.

GGHA accuses Martin of allowing her husband to move into her Section 8 housing.  Under the applicable regulations, no persons not listed in the rental agreement can reside in Section 8 housing without first obtaining authorization from GGHA.  The regulations further provide that the housing authority may terminate subsidies for any violations of the regulatory restrictions.  Considering these provisions together with the allegations, GGHA argues that it was justified to terminate Martin's subsidy.

Martin claims that the process by which her subsidy was terminated was unlawful and void.  She argues that she was not given proper notice of the allegations against her, that the informal hearing which purportedly determined her fate was defective for multiple reasons, and that the written determination of the hearing officer was insufficient as a matter of law.  Taken together, Martin argues, GGHA has violated her due process rights.  Martin therefore brings suit pursuant to 42 U.S.C. § 1983 against GGHA and two of its employees, Wayne East ("East") and Rose Schmuck ("Schmuck").  Because the individuals are sued only in their official capacities, the suit is

essentially against GGHA alone.

Public housing subsidies are "a matter of statutory entitlement for persons qualified to receive them,", the deprivation of which implicates the protection of due process under the Fifth and Fourteenth Amendments. *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) ("Goldberg"). "The Supreme Court has held that violations of federal housing laws by state agencies implementing these laws are actionable under section 1983 by Section 8 participants." *Clark v. Alexander*, 85 F.3d 146, 150(4th Cir. 1996), *citing Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 429 (1987). Therefore, Martin may seek a redress of these alleged due process violations via § 1983, and this case is properly before the court.

Martin requested a preliminary injunction in this matter, and a hearing was held on April 9, 1999. Because the evidence to be presented at that hearing, for purposes of a preliminary injunction, amounted to the same evidence to be presented at an eventual trial, the hearing was consolidated with a trial on the merits pursuant to Rule 65(a)(2), F.R.Civ.P.

### FINDINGS OF PERTINENT FACT AND
### ANALYSIS OF APPLICABLE LAW

1.  <u>GGHA's notice of termination was inadequate and denied due process</u>.

Martin complains that GGHA did not adequately inform her of the allegations against her when it notified her that her Section 8 housing subsidy would be terminated.  Under 24 C.F.R. 982.555(c)(2)(i), GGHA must provide a Section 8 participant "a brief statement of reasons" for a termination decision.  Binding case law has interpreted this regulatory provision to mean that a notice of termination of housing subsidy "must be sufficiently specific for it to enable an applicant to prepare rebuttal evidence to introduce at his hearing appearance."  *Billington v. Underwood*, 613 F.2d 91, 94 (5th Cir. 1980)("*Billington*").  To fulfill this requirement, notice must as least include some indication of the adverse evidence relied upon by GGHA.  *See Robbins v. U. S. Railroad Retirement Board*, 594 F.2d 448, 453 (5th Cir. 1979).  For the reasons that follow, the court determines that Martin was not given notice which complied with these requirements.

In the present case, Schmuck notified Martin via letter that her housing subsidy would be terminated.  That notice, dated February 15, 1999, stated only that "this termination is due to your failure to comply with your Section 8 Rental Certificate,

Section 4-B-9 and Section D-2," followed by citations to those provisions. In particular, Section 4-B-9 is quoted as follows: "The family MUST... [r]equest Housing Authority written approval to add any other family member as an occupant of the unit." This simple statement did not provide Martin adequate notice regarding GGHA's later-defined allegation that Martin's ex-husband had taken up residence with Martin. GGHA argues that Martin should have known that Schmuck's letter implicitly referred to Martin's husband, who had been staying with Martin for a brief period. Indeed, Martin confesses that she understood that much from the letter. But Schmuck's letter contains no details; it did not explain <u>why</u> it believed Martin's ex-husband had overstayed his welcome under the terms of the GGHA-approved lease. No specifics were mentioned, no dates were alleged, no evidence was offered. Even if GGHA's notice of termination was adequate to inform Martin that it believed her ex-husband had moved in without written authorization, the notice was nonetheless clearly insufficient to satisfy the regulatory requirements under § 982.555, because it was not adequately specific "to enable [Martin] to prepare rebuttal evidence." For this reason alone, the court finds that Martin was denied due process in the termination of her housing subsidy. For this reason alone, the court finds that the informal hearing which followed, at Martin's request, for which Martin could not have adequately prepared,

also constituted a denial of due process.

2.   <u>The pre-termination informal hearing denied due process</u>.

Upon receipt of Schmuck's termination letter, Martin requested an informal hearing as anticipated by § 982.555(a)(1)(v). Valerie Collins ("Collins") was appointed by GGHA as the hearing officer, and a hearing was held on February 25, 1999, at which Martin, Schmuck, and Collins were present. According to binding case authority, "While the regulatory phrase 'informal hearing' is not explicit in its requirements, we interpret it in light of decisions in other contexts specifying minimal procedures deemed necessary to promote the accuracy of administrative agencies' factual determinations." *Billington*, at 93. For the reasons set out below, this court determines that such minimal procedures were not afforded Martin at the pre-termination informal hearing.

Due process places several constraints upon pre-termination hearings. The individual who is challenging agency action, like Martin here, must be given an opportunity to state his or her position orally and to cross-examine adverse witnesses. *Goldberg*, at 268-270. Adverse evidence which is used to prove the government's case must be disclosed to that individual, and he or she must be given an opportunity to show that it is untrue. *Id.*, at 270-271. The decision maker may only rely upon the

evidence presented at the hearing.  *Id.*, at 271.  And, of course, the hearing officer must be impartial.  *Id*.  In one way or another, Schmuck and Collins failed to meet each of these requirements at Martin's informal hearing.

Collins relied upon two police reports filed by Martin to determine that Martin's ex-husband was residing with Martin. After Martin's checkbook had been stolen, and later after Martin's ex-husband stole her automobile, Martin completed and signed those police reports.  How they came to the attention of Schmuck and GGHA is unclear to this court.  These documents reflect the reporting police officers' own paraphrase of Martin's complaints[2] and his or her own assessment of the facts in each case.  Because the reports indicate that Martin's ex-husband had been "staying" with her, and because one officer mistakenly listed the ex-husband's address as Martin's own, Collins concluded that the reports proved residency.  Had Martin been given an opportunity to question these officers at the informal hearing, she could have demonstrated 1) that she never told the officers that her ex-husband lived with her, and 2) that the police officers had no independent knowledge leading to the

---

[2] Of course, the police reports are hearsay which would not likely be admissible at formal trial.  However, the Section 8 regulations provide that an informal hearing need not comply with the formalities of the Rules of Evidence.  24 C.F.R. 982.555(e)(5).

conclusion that her ex-husband did, in fact, live with her. GGHA retorts that Martin never requested an opportunity to cross-examine the police officers. But how could she, since Schmuck's termination notice did not inform Martin of the allegedly adverse evidence? Martin could not simply intuit what kind of adverse evidence Collins would be asked to rely upon by GGHA.

Collins also relied upon an "Address Information Request" form provided by the U.S. Postal Service. That form was prepared by Schmuck at Collins request, and it indicates that mail had been delivered to Martin's ex-husband at her address. Collins believed that this evidence proved conclusively that the ex-husband had moved in with Martin. However, the undisputed evidence indicates that the only mail ever sent to Martin's ex-husband at Martin's address was an arrest warrant sent by Gadsden's "fugitive squad" after Martin had pressed charges against her ex-husband relating to the theft of her car. The "fugitive squad" obviously used the address on the police report, erroneously written there by the police officer who filled out Martin's complaint. In short, the court finds that the postal service's form is of no probative value. In this case, it constitutes absolutely no reliable indication about the residency of Martin's ex-husband.

Collins also relied upon information which was impermissibly reported to her by Schmuck <u>after</u> the informal hearing had

concluded. Schmuck often drove past Martin's residence, and not infrequently had she witnessed Martin's ex-husband visiting there.[3] Although Schmuck had no real knowledge that the ex-husband had moved into the home, she surmised that he had. <u>After</u> the informal hearing concluded, Schmuck and Collins saw fit to engage in *ex parte* communications, in which Schmuck told Collins that she personally believed, on the basis of her drive-by sightings, that Martin's ex-husband had moved in with Martin. The court acknowledges that an informal hearing may enjoy relaxed procedures, but surely *ex parte* communications go too far. Due process clearly demands that Martin should have been given an opportunity to respond to Schmuck's testimony. By this single act, Martin was denied disclosure of adverse evidence, denied a right to cross-examine an adverse witness, and denied an opportunity to state her position.

Thus there was no substantial evidence which could have justified a finding to the effect that Martin's ex-husband had moved into her home without GGHA authorization. The police reports cannot be so interpreted. The postal service's form likewise cannot be so interpreted. And Schmuck's *ex parte*

---

[3] Martin and her ex-husband have two children. Desiring that her children remain in contact with their father, Martin allows, even encourages, their father to visit. She also reports that he helps her around the house by performing various maintenance and carpentry tasks.

communication to Collins was simply impermissible as a matter of due process. The evidence against Martin has simply fallen away. On the other hand, there is credible evidence that Martin asked her ex-husband to tend to their children while she recuperated from surgery, that he stayed in her home only for a brief period lasting no more than a couple of weeks, and that Martin required her husband to leave prior to violating the provisions of her lease, which expressly allows visits up to 30 days long. There is really no good evidence against her, but there is substantial evidence in Martin's favor.

The court is moved to wonder aloud why Collins so readily accepted the evidence which this court now disregards as an unreasonable basis for her determination. Why, on the other hand, did Collins so readily disregard Martin's credible evidence? The court has no reason to suggest that Collins acted inappropriately, discriminatorily, or with hostile animus. But the court does find disturbing the GGHA arrangements which have paired Schmuck and Collins on a regular basis for years. Schmuck's termination decisions are only reviewed by Collins; Collins only reviews Schmuck's determinations, and she does so almost weekly. The two occupy offices across the hall from one another and have known each other for years. Although there is no evidence that the two have a social relationship outside the office, the court must speculate that years of cooperation

eventually influence their informal hearing routine.  Sooner or later Collins must develop an estimate of Schmuck's competency which infuses each new review process.  After years of teamwork, might Collins be willing simply to take Schmuck at her word in most cases, without scrutinizing each decision with the due attention required?  "Due" process requires that Martin have access to an impartial hearing officer.  Although the court in no way wishes to accuse Collins of intentional bias or partiality, the court wishes to note for the record that alternate arrangements, not regular teaming of accuser and judge, would surely preserve impartiality with greater effect.

Based on 1) the court's findings that neither the police reports nor the postal office's address form present a reasonable basis for Collins' determination, 2) in consideration of the impermissible *ex parte* communications between Schmuck and Collins, 3) given the questions of bias raised by the regular pairing of Schmuck and Collins, and 4) given the substantial evidence supporting Martin's position, this court now determines that the informal hearing denied due process to Martin.  Accordingly, any determinations issuing from the informal hearing are void.[4]

---

[4] The court notes again that the informal hearing denied due process for the additional reason that Martin could not possible have prepared adequately for it, because the notice of termination provided to her by Schmuck did not itself comply with

3.  <u>Collins' written decision was inadequate as a matter of due process</u>.

Collins issued a written summary of the informal hearing, mailed on March 5, 1999, summarizing the reasons for terminating Martin's subsidy as follows:

> Due to the information we received from the Post Office and the Police Department your assistance under the Section 8 program will be terminated on March 17, 1999.

Collins does not indicate which regulations Martin supposedly transgressed. She does not indicate what factual conclusions she reached on the basis of the evidence referenced. She does not even indicate that she has reached <u>any</u> factual conclusions which could support a termination of subsidy.

The Eleventh Circuit has held that federal courts must give a local agency's unreviewed fact finding the same preclusive effect to which it would be entitled in state court, if that agency was acting in a judicial capacity and parties were given an adequate opportunity to litigate. *Thornquest v. King*, 82 F.3d 1001, 1004 (11th Cir. 1996), *citing University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986). Here the court finds obvious that the informal hearing afforded Martin was "in a judicial capacity," as it was held to determine her legal rights under Section 8. Whether Martin was given "an adequate opportunity to

---

due process.

litigate" is questionable, but even assuming this prerequisite was met, this court need give no preclusive effect to any "fact finding" by Collins, <u>because she in fact made no findings</u>. Collins' written termination decision simply regurgitates GGHA's allegations and informs Martin of the termination, but nowhere does she state factual findings justifying termination of benefits.  Having heard the evidence at trial, this court notes that if she had made factual findings supporting termination, they necessarily would have been unreasonable and clearly erroneous -- no reasonable factual findings could have supported termination.  In that case, this court nonetheless would have been compelled to reverse her decision.

    Due process demands that Martin be informed of the reasons why her entitlement has been taken away.  In this case, the initial notice to Martin did not adequately provide that information, the informal hearing did not rely upon evidence which could support the termination, and the written determination merely stated, in conclusory fashion, that the hearing officer was upholding GGHA's decision to terminate Martin's assistance.  At every step of the way, Martin was denied due process.

## CONCLUSIONS OF LAW

Based upon the foregoing findings of fact, the court determines that Martin was inexcusably denied due process throughout the process which terminated her Section 8 housing subsidy. Accordingly, the termination of Martin's housing subsidy is null and void. Martin's subsidy is due to be restored, retroactive to the date on which it was terminated, and GGHA shall be enjoined from terminating Martin's Section 8 assistance on the basis of Collins' previously established record.

The court notes that it finds the treatment accorded Martin somewhat unsettling. Where is the compassion and care demanded by common decency, not just by due process, before the government proceeds to remove the roof from over the heads of a needy family? Schmuck could have taken 5 minutes to write an appropriate notice. Collins could have given serious and sincere attention to <u>all</u> the evidence - not just her teammate's evidence. Schmuck and Collins should have known better than to converse about the case after the hearing and outside Martin's earshot. Collins, an individual with substantial responsibility, is capable of writing a clearer decision than the sloppy document she issued to Martin. Having been assured that Martin's landlord would not evict her while this case is pending, this court has taken the time to write this opinion in hopes that GGHA will

learn from its shortcomings in Martin's case and will not treat other Section 8 participants in future proceedings the same way.

A separate order will be entered in keeping with this memorandum opinion.

DONE this 23rd day of April, 1999.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE